UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN KNAPP,<br><br>                              Plaintiff,<br><br>-against-<br><br>S/Y "CALIENTE", her engines, tackle, apparel, furniture, equipment, and all other necessaries thereunto appertaining and belonging, *in rem*,<br><br>                              Defendant. | Civil Action Number<br><br>3:02 1342 (MRK)<br><br><br>November 13, 2003 |

**PARTIAL OBJECTION TO MOTION FOR CONFIRMATION OF SALE**

Monte Lusk and S/Y "CALIENTE" *in rem*, by and through their attorneys, HEALY & BAILLIE, LLP, respectfully move this court to reduce the custodial fees claimed by substitute custodian, Mr. Rives Potts, the General Manager of Brewer Pilot Point Marina (collectively "BPPM"), from $20,092.63 to $10,810.25, as set forth herein. The determination of this motion does not require that the court delay approval of the sale of CALIENTE, but merely the payment of custodial fees.

BPPM, acting through Mr. Potts as substitute custodian, claims $20,092.63 in custodial and other unspecified fees for storing CALIENTE at Pilot's Point between September 2002 and the present. *See* Exh. 1, listing charges by BPPM, annexed hereto. However, even apart from BPPM's lack of documentary supports, its claim is objectionable for numerous reasons.

First, BPPM claims monthly "custodial" charges of $1,010.60 for October 2002 and $1,070.60 thereafter for merely storing CALIENTE at the yard. Conservatively stated, this monthly charge is more than double the rate BPPM charges recreational boat owners in the open market. Had BPPM incurred extraordinary expenses in storing CALIENTE, such as special insurance or yard security, their excess rate might be justified. However, they did not incur any extraordinary expenses. CALIENTE was stored on jack stands alongside all of the other dry-stored yachts on premises without security or any additional services. Thus, BPPM's charges for CALIENTE should be comparable to their standard rates for other yachts.

As BPPM's own on-line contract (*see* Exhibit 2) indicates, its standard winter rate for storing CALIENTE from October through April would have been $2,652 (51' @ $52/ft.), plus a $4 per ft. charge for storing the mast (i.e., about $260), or $2,912 in total, and not $7,494.20 as BPPM now claims. Likewise, summer storage at the yard would not have exceeded the 2003 winter rate, and would be far below the $6,423.60 that BPPM seeks to charge. Thus, even apart from the penalty interest discussed below, BPPM's storage charges are inflated by at least $8,093.80.

Second, BPPM seeks $2,176.63 for "winterizing all systems, rinse sails, unstep mast." Ordinarily, BPPM charges its customers $4 per foot to unstep masts, which, in this case, would equate to about $260, plus the minimal labour spent unstepping the spar, and removing and washing CALIENTE's torn main sail and jib. *See* Exhibit 2, BPPM Winter 2003 storage contract, annexed hereto, for rate information. Why should CALIENTE be charged different rates than BPPM's ordinary cutsomers? As for BPPM's claim that it "winterized" the boat, winterizing services by marinas are ordinarily in the range of $500-$700. Not only can we not determine what if any services were provided, but BPPM's "winterizing" and mast handling fees are inflated by at least

$1,176,63 over fair market value.

Third, BPPM unilaterally increased their monthly "custodial" fee for CALIENTE from $1,010.60 to $1,070.60, and also improperly charged compounded monthly penalty interest—in October 2003, assessing an interest penalty of $159.16. The penalty interest totals $1,116.45, and the monthly increase totals an additional $660. Their action was unauthorized and further inflated their monthly storage fees by a total of $1,716.45, plus the compounding factor.

Fourth, lest BPPM now cry foul, it should be remembered that BPPM now stands to make an 8% sales commission on a boat that it has been exhibiting for sale since this summer. Thus, not only will BPPM earn a commission of $4,880, but it is seeking in excess of $1,000 per month in storage during the time period that it was showing the boat for sale.

In lieu of awarding BPPM more than 33% of the value of CALIENTE, Defendant and the Lusks respectfully request that the Court reduce BPPM's custodial claim from $20,092.63 to no more than $10,810.25.

  For the aforementioned reasons, it is respectfully submitted that Defendant's and the Lusk's motion should be granted.

Dated: South Norwalk, Connecticut
    November 13, 2003

                  HEALY & BAILLIE, LLP
                  Attorneys for MONTE LUSK and
                  for Defendant S/Y "CALIENTE"*in rem*
                  By_____
                  Matthew A. Marion (CT-12264)
                  20 Marshall Street, Suite 104
                  South Norwalk, Connecticut 06854-2282
                  Tel: (203) 354-1361
                  Fax: (203) 354-1363

_____
  SO ORDERED

## **CERTIFICATION**

This to certify that a copy of the same has been mailed postage pre-paid to the following counsel of record and the following non-party interested in this motion on November 13, 2003:

    Patrick F. Lennon, Esq.
    Tisdale & Lennon
    10 Spruce Street
    Southport, CT 06870

    Mr. Rives Potts, General Manager
    Brewer Pilot Point
    63 Pilots Point Drive
    Westbrook, CT 06498

    _____
    Matthew A. Marion