UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN KNAPP | : |
| | : |
| v. | : NO. 3:02cv1342 (MRK) |
| | : |
| S/Y CALIENTE | : |

**ORDER**

The Court having held a hearing by telephone on December 12, 2003 regarding the Partial Objection to Motion for Confirmation of Sale [doc. #42], with the participation of the parties and representatives of Brewer Pilot Point Marina (BPPM) and Brewer Yacht Sales, and having considered correspondence from Matthew Marion, counsel for the S/Y CALIENTE, dated December 12, 2003 and December 15, 2003, and correspondence from BPPM dated December 13, 2003, the Court enters the following orders:

1. The custodial fees due BPPM will be $1,000 per month, plus appropriate sales tax and the environmental fee (yielding a total of $1,070.60 per month from May to October and $1,010.60 per month from November through April), as set forth in the Order for Appointment of Substitute Custodian [doc. #5]. No other portion of the custodial fees will be granted. No interest will be charged on the custodial fees. No separate charges for winterizing, removing sails, or unstepping the mast will be permitted, as these are deemed to have been included in the $1,000 per month paid for maintenance and preservation of the vessel, per the Order for Appointment of

Substitute Custodian.

2. The Court must also fix the duration of the period for calculating the custodial fees. By its letter of December 3, 2003 attached to Affidavit of Plaintiff's Counsel [doc. # 46], BPPM sought custodial fees only through October 2003. By letter dated December 13, 2003, however, BPPM sought additional custodial fees for November and until December 12, 2003, when the Court understands the CALIENTE was picked up by its new owners. Counsel for the CALIENTE, in his letter dated December 15, 2003, asserted that BPPM's claim for custodial fees in November and December was untimely since it was not addressed at the hearing on December 12, 2003. Counsel for the CALIENTE also argued that the custodial fees incurred after the Order of Sale was due to BPPM's refusal to release the CALIENTE to its new owner.

Though BPPM's claim for custodial fees in November is technically late and therefore could be denied on that basis alone, the Court believes that it is only fair and just that BPPM be paid custodial fees for the month of November 2003 while it was still serving as Substitute Custodian. The Court did not enter its Order of Sale until November 24, 2003 and therefore the vessel remained under the custody of the Substitute Custodian pursuant to the Order for Appointment of Substitute Custodian [doc. #5] at least through November 24. Moreover, given the Thanksgiving holiday, it is only reasonable to expect that BPPM would have continued to exercise its custodial

functions through the balance of the month, to permit the new owners time to pay the purchase price and make suitable arrangements to pick up the CALIENTE. However, the Court will not grant custodial fees beyond the end of November, since under the Court's Order Confirming Sale of Vessel Pursuant to Supplemental Rule 4E(9)(b) [doc. # 44], BPPM should have released the CALIENTE to the new owner promptly following payment of the purchase price. There is substantial indication from the new owners, the parties, and BPPM itself during the telephonic hearing that BPPM was not prepared to release the CALIENTE to the new owners until the custodial fee issue was resolved. However, that action was not proper as the Court in its Order Confirming Sale had made reasonable escrow arrangements to protect BPPM regarding its fee and the CALIENTE should have been released to the new owner promptly upon payment of the purchase price.

Accordingly, pursuant to its Order for Appointment of Substitute Custodian [doc. #5], the Court awards total custodial fees to BPPM of $15,639, calculated as follows: ($1,000 per month plus 1% environmental fee per month and 6% Connecticut sales tax on the environmental fee plus 6% Connecticut sales tax for the May through October storage) times 15 months (September 2002 through November 2003). This custodial fee will be payable out of the proceeds of the sale of the CALIENTE.

3. BPPM will also be paid its fee of $808.48 for the initial handling of the vessel prior to the issuance of the Order for Appointment of Substitute Custodian. This fee of

$808.48 will paid to BPPM out of Mr. Knapp's share of the sale proceeds.

4. Brewers Yacht Sales will be paid its sales commission of $4,800 out of the sale proceeds. Neither the buyers nor the sellers shall be responsible for the Connecticut sales and use tax on the commission charges by Brewer Yacht Sales.

5. By agreement of the parties and Brewers Glen Cove Marina, Brewers Glen Cove Marina will be paid $1,000 for the preexisting winter storage charge relating to the CALIENTE and this fee will be deducted from Mr. Lusk's share of the sale proceeds.

6. No later than December 23, 2003, the foregoing amounts shall be paid to BPPM and Brewer Yacht Sales, and the remaining sales proceeds will be distributed to Mr. Knapp and Mr. Lusk in accordance with the percentages set forth in the Court's Order Confirming Sale.

7. There being no further action required in this case, the Clerk is directed to close the file.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
U.S.D.J.

**Dated at New Haven, Connecticut: December 16, 2003**